**In re BUFFETS HOLDINGS, INC.,
A Delaware Corporation, et
al., Debtors.**

**OCB Restaurant Company,
LLC, Plaintiff,**

**v.**

**John Vlahakis and Sandra Vlahakis,
d/b/a Vlahakis Real Estate
Development, Defendants.**

**Bankruptcy No. 08–10141(MFW).
Adversary No. 08–51086(MFW).**

United States Bankruptcy Court,
D. Delaware.

Dec. 8, 2008.

Erin Edwards, Joel A. Waite, John T. Dorsey, Joseph M. Barry, M. Blake Cleary, Nathan D. Grow, Patrick A. Jackson Pauline K. Morgan, Ryan M. Bartley, Sean T. Greecher, Young, Conaway, Stargatt & Taylor LLP, Michael R. Lastowski, Duane Morris LLP, Wilmington, DE, William A. Brasher, Brasher Law Firm, LC, St. Louis, MO, for Debtors.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the motion by Defendants John Vlahakis and Sandra Vlahakis d/b/a Vlahakis Real Estate Development (the "Defendants") to transfer venue of this adversary proceeding to the United States District Court for the Western District of Michigan. OCB Restaurant Company, LLC (the "Plaintiff") opposes the motion. The Court will grant the motion for the reasons discussed below.

## I. BACKGROUND

On January 22, 2008, Buffets Holdings, Inc. and several of its affiliates, including the Plaintiff, (collectively the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

The instant adversary proceeding involves a dispute over a Lease Agreement (the "Lease") executed by the Debtors and the Defendants on April 12, 1992. The Complaint was filed on July 9, 2008, seeking damages arising from the Defendants' alleged breach of contract for failure to

---

**1.** The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

make certain repairs to the roof of the property located at 2301 West Grand River Avenue, Okemos, Michigan (the "Leased Premises"). The Complaint further seeks to offset against unpaid rent certain amounts allegedly paid by the Plaintiff for necessary repairs to the Leased Premises. The Defendants filed an answer with counter-claims, denying all allegations and asserting that the Plaintiff breached the Lease.

On August 22, 2008, the Defendants filed the instant motion, seeking to transfer venue of the proceeding to the United States District Court for the Western District of Michigan.

## II. JURISDICTION

The Court has jurisdiction over this motion to transfer venue, which is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A) (2006). See Brizzolara v. Fisher Pen Co., 158 B.R. 761, 767 (Bankr. N.D.Ill.1993) ("Motions for change of venue, abstention, and remand are core proceedings under 28 U.S.C. § 157(b)(2)(A)."). See also Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.), 110 B.R. 638, 653 (Bankr.E.D.N.Y.1990) (concluding that a motion to change venue does not involve adjudication of a right that may be heard only by an Article III Judge and, therefore, "a venue motion is a core matter and that we have the authority to determine discretionary transfer of venue motions despite the omission of the Bankruptcy Court from § 1412.")

## III. DISCUSSION

██ Pursuant to section 1412 of title 28,[2] a court is permitted to transfer venue of a case or proceeding which is properly before it "in the interest of justice or for the convenience of the parties." The mov-

ing party must demonstrate by a preponderance of the evidence that transfer of venue is warranted. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del.), 296 B.R. 323, 325 (Bankr.D.Del.2003). Ultimately, the decision to grant or deny a motion to transfer venue lies within the sound discretion of the Court. Hechinger, 296 B.R. at 325. Courts within the Third Circuit have enumerated several factors in evaluating motions to transfer venue, including:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

Id. (citing Jumara, 55 F.3d at 879–80).

With respect to the first factor, the Plaintiff argues that its choice of forum should be given significant weight because this action was commenced in its home court. The Defendants argue that the Plaintiff's choice of forum should be given less consideration where the Plaintiff's

---

**2.** Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (2006).

choice has no direct relation to the operative, underlying facts of the proceeding.

■ While recognizing the significant weight given to a plaintiff's choice of forum in any venue transfer decision, the Court finds that weight is diminished where, as here, the Plaintiff's choice of forum for its bankruptcy case has no direct relation to the operative, underlying facts of the adversary proceeding. *See, e.g., Centennial Coal, Inc. v. Coal Equity, Inc.*, 282 B.R. 140, 144–45 (Bankr.D.Del.2002). The Plaintiff claims that the adversary proceeding was brought in its home court of Delaware. Yet, the Plaintiff is a limited liability company organized under the laws of the state of Minnesota and conducts business in the state of Michigan. This adversary proceeding is a breach of contract action, which will have little if any impact on the administration of the Debtors' bankruptcy case and/or the estate. *Id.* at 145 (granting motion to transfer venue because, inter alia, Plaintiff's attempt to liquidate account receivable would have little impact upon bankruptcy case or estate).

The Plaintiff argues that the Defendants' choice of forum, the second factor, should be given little weight. The Court agrees that typically a defendant's preference does not carry as much weight as a plaintiff's choice of forum. There is an exception, however, where, as here, the other *Jumara* factors weigh substantially in favor of transferring venue. *See Jumara*, 55 F.3d at 880; *Centennial Coal*, 282 B.R. at 148 (finding other factors overcome presumption in favor of plaintiff's choice of forum).

As to the third factor, the events relevant to the Plaintiff's claim arose entirely in Michigan. The Defendants note that the Lease was written, signed, performed, and allegedly defaulted in Michigan. The Court agrees that none of the events relevant to the claim or its defense arose in the District of Delaware. *See Jumara*, 55 F.3d at 882 (transferring venue after finding that "[e]verything related to this action occurred in Luzerne county, which lies in the Middle District: plaintiff resides there, the contract was signed there, the underlying accident occurred there, and the requested arbitration will eventually occur there.")

The fourth factor (the location of books and records) also weighs in favor of transferring this proceeding. The Plaintiff argues that the claim involves relatively few issues in dispute and document production would not be extensive. The Court is not convinced. Instead, the Court agrees with the Defendants' argument that because substantially all of the books, records, documents, and exhibits relevant to the matter in controversy are located in Michigan, the adversary proceeding should be transferred there. *See Jumara*, 55 F.3d at 879; *Centennial Coal*, 282 B.R. at 146, n. 11. Furthermore, the Court notes that a factfinder or a witness may be required to visit the Leased Premises, adding another reason why the adversary proceeding should be heard in Michigan. *See Centennial Coal*, 282 B.R. at 147.

On the fifth factor, the Defendants argue that it will be more convenient for the parties to litigate in Michigan because it is the location of virtually all of the evidence, the witnesses, and both litigants' place of business. In response, the Plaintiff argues that transferring venue of this proceeding to another forum may actually increase the administrative expenses of the estate.

The Court rejects the Plaintiff's argument. In light of the parties' proximity to the witnesses and documents in Michigan, the Court finds that it would be significantly more burdensome and expensive for the Plaintiff (as well as the Defendants) to litigate in Delaware. *See Jumara*, 55 F.3d at 882 (discussing the impact of this factor

on forum selection clause); *Centennial Coal,* 282 B.R. at 148. Furthermore, the Court agrees with the Defendants' assertion that they had little or no expectation that litigation on the Lease would be commenced in Delaware. *Centennial Coal,* 282 B.R. at 148 (recognizing that defendants had little or no expectation that litigation arising out of transactions conducted entirely in Kentucky would be litigated in Delaware).

With respect to the sixth factor, the Defendants argue that substantially all of the material witnesses, including non-party witnesses and the Plaintiff's agents and employees, are located in the state of Michigan. In response, the Plaintiff argues that the Defendants failed to demonstrate that any witnesses are actually unavailable for trial in Delaware.

With respect to the non-party witnesses, the Court finds that they are outside the Court's subpoena power. *See* Fed. R. Bankr.P. 9016 (incorporating Federal Rule of Civil Procedure 45(b)(2), which limits the court's subpoena power to a 100–mile radius from the courthouse). In addition, given that this proceeding relates to the physical condition of the roof of the Leased Premises, an examination of the Leased Premises may be necessary. *See Centennial Coal,* 282 B.R. at 147. To the extent expert witnesses are needed, it will be more convenient for the parties and their witnesses if the proceeding is transferred to Michigan where the leased Premises are located. *Id.* at 147–48.

The seventh factor (the enforceability of the judgment) does not weigh in favor of either party. The Court has no reason to believe that a judgment rendered in either jurisdiction would not be given full faith and credit. *See Jumara,* 55 F.3d at 882; *Hechinger,* 296 B.R. at 326.

As to the eighth factor (practical considerations that would make the trial easy, expeditious or inexpensive), the Plaintiff claims that the Court's familiarity with the Debtors' business would allow for a more efficient resolution of the matter here. The Defendants argue that a federal judge in Michigan is intimately more familiar with the Michigan state law which would allow for a more expeditious resolution of the matter.

The Court concludes that any knowledge it has of the Debtors' bankruptcy case would be of little assistance in deciding this adversary proceeding involving a breach of contract under Michigan state law. *See Centennial Coal,* 282 B.R. at 145. Therefore, practical considerations will be better served by transferring venue of the proceeding.

On the ninth factor (the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets), the Plaintiff argues that removal of a single adversary proceeding will not substantially alleviate this Court's heavy caseload. *See Oglebay Norton Co. v. Port (In re Once Inv. Co.),* 320 B.R. 577, 581 (Bankr.D.Del. 2005). However, the attenuated relationship between the Debtors' bankruptcy case and this adversary proceeding support transfer of this proceeding to reduce, however minimally, the burden upon the Court. *See Centennial Coal,* 282 B.R. at 148 (acknowledging burden on the Court's docket).

With respect to the tenth factor (the public policies of the fora), the Defendants argue that a Michigan court has a greater interest in resolution of a matter that may affect Michigan residents, businesses, and development of Michigan law. In response, the Plaintiff argues that transfer of the proceeding to Michigan would dramatically increase the administrative expenses of the estate, thereby lowering the amounts available for distribution to the creditors.

The Court finds that a Michigan court indeed has a strong interest in resolution of the matter due to the potential impact upon Michigan residents and businesses, as well as the development of Michigan law. In contrast, the instant litigation constitutes nothing more than a contract dispute which would not significantly impact the Debtors' estate. In fact, since all of the witnesses, records, and books are in Michigan, transferring venue of this proceeding will likely reduce administrative expenses of the estate.

As to the eleventh factor (the familiarity of the judge with the applicable state law), the Plaintiff contends that the legal issues presented are neither complex nor novel; thus, there is no reason that this Court would be unable to apply Michigan law. Although the Court is capable of applying Michigan law to the issues presented, the Court agrees with the Defendants' position that a judge sitting in Michigan is more familiar with Michigan state law. *Id.* (finding that "although Plaintiff claims that none of the issues involved are novel or complex, I think it would be more appropriate for a local judge to decide the matter").

With respect to the twelfth factor (the local interest in deciding local controversies at home), the Court agrees with the Defendants' argument that a court in Michigan has a greater interest in deciding issues which may affect Michigan residents and the development of Michigan law. *See Jumara,* 55 F.3d at 882; *Centennial Coal,* 282 B.R. at 148 (recognizing that Kentucky court had a "greater interest in deciding issues which may affect Kentucky residents and/or the development of Kentucky common law").

After weighing the above factors, the Court concludes that the Defendants have met their burden of establishing that transfer of this adversary proceeding to the United States District Court for the Western District of Michigan is warranted for the convenience of the parties and in the interest of justice.

## IV. *CONCLUSION*

For the reasons set forth above, the Court will grant the Defendants' motion to transfer this adversary proceeding to the United States District Court for the Western District of Michigan.

### ORDER

**AND NOW,** this 8th day of **DECEMBER, 2008,** upon consideration of the Motion by Defendants John Vlahakis and Sandra Vlahakis d/b/a Vlahakis Real Estate Development (the "Defendants") to transfer venue of this adversary proceeding to the United States District Court for the Western District of Michigan, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion by the Defendants to transfer venue of this adversary proceeding to the United States District Court for the Western District of Michigan is **GRANTED.**